Good morning, Your Honor, and may it please the Court, I am Leah Hurwitz, and I am here to represent the appellant Francisco Juarez-Morales. My case involves someone who was expeditedly removed as well. Mr. Juarez had lived in the United States for six years when he was encountered by immigration officers, and he was turned around, just as Mr. Tapia was in the Tapia case, and returned to Mexico. When he reentered, he lived he reentered to meet his wife and his children. He had ties to the United States, and then when he was placed in proceedings again in 2003, the immigration judge pre-terminated his hearing, saying that he did not meet the physical presence requirements. I would disagree. I think that his expedited removal is equivalent to the turnaround in Tapia. There's really no difference between the two cases. The only difference, this Court has interpreted an administrative voluntary departure to be equivalent to a stop-time event. The clear reading of the law found at 240A, I think, is that there is no difference between the AD 1 and 2, is that a notice to appear will terminate, or the – if you do certain things like a criminal conviction or if it's a security reason, you can be – you can not fulfill that time requirement. But in this case – but it also says that if you are – if you are out for less than 90 days or an aggregate period of 180 days, that it should not break your physical presence. And that is the case for Mr. Juarez. He did not. He was just there briefly, and he returned to the United States where he had a family, substantial ties. And that's what Congress was looking for when they instituted these amendments. I have a question for you. Is your interpretation consistent with Romales, the BIA's case? Well, I think that voluntary departure under threat of deportation is analogous to a notice to appear. And – I need a direct answer. Is your position consistent or inconsistent with the BIA's published decision in Romales? Well, I would say it would be consistent because they really didn't take a dicta. There was only – in regards to expedited removal, that was only dicta. They didn't really rule on an expedited removal. They may have mentioned a removal, and that was dicta too, but that case didn't – did not include someone who had an expedited removal. But wasn't their analysis that the reason that a voluntary departure cut off the alien's continuous physical presence was because it was more like a removal order? No. I believe – no, Your Honor. I believe that it is because it was like a notice to appear, because he was saying he was not going to be placed into proceedings, and that is the big difference. There's nothing in the statute that even says that a removal order would stop time, much less an expedited removal order. That's just – and the meaningful departure part that used to be used in the old law under EMAC, it's been superseded by the new laws. Now, if under the expedited removal order statute, the alien is not allowed to return for five years, which sounds like Congress contemplated a break in the continuous physical presence of five years, can you address that aspect? Well, Your Honor, the thing is, is that when you – one thing that was not addressed in the prior case that I saw is that you can't – if you have credible fear, you can ask for a hearing as well. And I have known people who have asked for credible fear and then asked for cancellation of removal and were successful. It's kind of a policy decision, I would think, as to what they're going to do with somebody when they have an expedited removal. They could reinstate deportation under an expedited removal order if they wished, but instead they have allowed people – I mean, if you – If it's a policy decision, why is it ours to make? Well, that's true, Your Honor. But if you do decide that an expedited removal cuts or severs that physical presence continuity, then you will have been eliminating this remedy for all arriving aliens. All arriving aliens could just be expeditiously removed, and they would not be able to avail themselves of cancellation of removal. And there's nowhere in the statutes that that's written. I mean, that is an available remedy, and it is available to arriving aliens just as it is to other aliens who are here. So why would an expedited removal be anything other than a turnaround, such as discussed in Tapia? It's identical, but for that fact. And as I said, I've known aliens who have requested – who have said that they have a credible fear so that they will, in the future, be able to ask for cancellation and have been successful with it. So, anyway. Has the BIA ruled on the status of an expedited removal as far as its impact on the passage of time on the 10-year physical presence? No, Your Honor. The NAVA case is the closest thing to it, and that was an exclusion under the former laws where the former interpretations were used of brief, casual, and innocent. But they have not ruled on it, Your Honor. No, it's not. It hasn't been ruled by the BIA. This is a matter of first impression. And furthermore, Mr. – my client, Mr. Juarez, was pre-termitted because of an alleged voluntary departure that never happened. The sole reason that the government alleged that there was a voluntary departure was by using an I-213 form that was faulty. It was flawed. Over the objections of the – of the appellant, they introduced this I-213 form, saying that he had a voluntary departure, whereas I-213 forms have been used for alienage or deportability. They have – they tried to use this form to show that he had a voluntary departure. It's a recognized exception to the evidence rules because it's a recorded conversation between the alien and an immigration officer at the border. However, in this instance, they're just relying on a box that was checked. And inconsistently, there was another box checked on the form that said he had no prior immigration history. So I would say that the form was neither purportive nor fair. There is a written portion and there's a typed portion. There's inconsistencies which lead to a finding that it was untrustworthy. For these reasons, I believe that my client deserves a full and fair hearing before an immigration judge to prove that he is cancellation eligible and he should not have been pre-terminated. I do believe the expedited removal did not cut off his 10 years of continuous physical presence. And I believe that the interpretation of the Board of Immigration Appeals and the immigration judge were overbroad. They were overbroad interpretations of the statute, particularly the special rule relating to continuous residence for physical presence, according to that statute. Would you like to save some time for another? Yes, I would, Your Honor. That would be fine. Thank you. We'll hear from the government now. Good morning, Your Honors. I'm Erica Miles, and I represent Alberto Gonzales in this matter. The Court should deny the court's decision. Sotomayor, it seems to me that in our decision-making, we need to figure out, at least in part, whether Tapia applies or whether Vazquez-Lopez applies, our own two cases that have different results. Which is the better analogy and why? Which direction should we go? Sure. I would wholeheartedly advance that Tapia is the case that you should rely on in this matter. Tapia specifically addressed saying, removal and administrative voluntary departure are stop-time events for accrual of continuous physical presence. This Court in Tapia ---- Was that holding, or was that part of the reasoning, or was that a dictum? It was part of the reasoning. And this Court in Tapia looked at the Board's precedent decision in Aviles-Neva, in which the Board did, in fact, rule that expedited removal under the current regulations is, in fact, a removal and serves as a stop-time event. This Court in Tapia analyzed the reasoning in Aviles-Neva and looked at the Board's reasoning that distinguishing a turnaround from a formalized process in which a determination of inadmissibility has been made, here, with an expedited removal, a determination of inadmissibility has been made. It also discussed the fact that somebody with who has been removed, whether under 240 proceedings or under expedited removal, as well as administrative voluntary departure, all of those individuals are precluded from reapplying for admission after such an order has been entered. That is the case here with expedited removal. And this Court in Tapia specifically cited to that. What page are you relying on? In Tapia, on page 1002. The Court stated that Congress's intent would be thwarted, Congress's intent that somebody who has been removed or accepts an administrative order of voluntary detention would be thwarted if such an order would not constitute a stop-time event, and that's exactly expedited removal. And this Court in Tapia on page 1004 specifically mentioned expedited removal under the procedures of 8 CFR 235.3, stating, in contrast to the informality surrounding a turnaround at the border, where Congress has authorized immigration officials to make an actual determination of inadmissibility, and it has identified specific procedures and authorized only certain individuals to make the determination, not any immigration or border officer. And it cites to the expedited removal procedures. This Court clearly made the distinction in Tapia that removal, including expedited removal, and administrative voluntary departure, as previously found by this Court, constitutes a stop-time event. It is not at all analogous to a turnaround because here not just a record has been made, an inadmissibility determination has been made. And in addition, this person, this individual, Mr. Juarez-Ramas, was precluded from coming back and seeking reentry for a period of years. That in and of itself shows Congress's intent that it is a stop-time event because they cannot come back. And I also would like to point out that this occurred in 1999, and Mr. Juarez claims that he first came here in 1993. That was only six years. So when 1999 arrived and he was expeditiously removed, he had no relief available to him at that point. There was no reason to ever put him in removal proceedings. He was here for six years, not ten. So isn't that in dispute as to when he actually arrived? Even assuming, that's the earliest date he's provided is 1993. And the fact that he was expeditiously removed is not a fact at issue here. It is a given. It has been admitted. So that six-year period, right then and there, never would have provided him with any form of relief at that point in time anyway. So analogizing it to somebody who has a credible fear and then gets into 240 proceedings to claim asylum and additionally apply for cancellation of removal, that would not have been the case here. He would have had no remedy for cancellation of removal then. But I certainly believe that this Court's decision in Tapia has already laid out the foundation for this case. It is determined that removal, an expedited removal, is equal to removal. And this Court in Tapia cited to the statute at 212a9 in discussing Congress's intent to preclude people from seeking readmission if they had been removed. Well, under that provision, expedited removal itself is defined as an alien who has been removed, and this Court cited to that very statutory provision. Under Tapia, this Court made it quite clear that any formalized process with a determination of inadmissibility from where somebody is precluded from seeking readmission based on that process serves as a stop-time event, because that was Congress's clear intent. And that's why the Board's interpretation in Avila v. Neva should be given Chevron deference. If you have nothing further, then I will conclude and just ask this Court to please affirm the Board's decision and deny the consolidated petitions for review. Thank you. I don't believe any of my colleagues have any more questions, so thank you. Thank you. And, Ms. Hurwitz, you have some rebuttal time remaining. Yes, Your Honor. I also urge that these courts adopt the ruling in Tapia in that there should be flexibility in interpreting the stop-time events. An expedited removal is nothing like a formal removal hearing, which is a procedural with a full and fair hearing. What do you make of the passage in which the court says that it's contrasting the turnaround in Tapia with congressionally authorized methods of removing someone, including expedited removal, putting it over in another category? What do you make of that passage? I believe that it was not well thought out, because we're bound for a hearing regardless of whether it's well thought out, aren't we? Well, because it wasn't really deciding. That case did not entail an expedited removal. It was what is the difference? He crossed in Texas and my client crossed in California. Isn't that a bit arbitrary that Tapia got turned around because those officers didn't put in an expedited removal? Well, the point that the opinion is making, as I understand it, is that when a congressionally authorized procedure has been followed, that counts as a stop-time event as distinct from some other procedure, whatever it may be. Isn't that the distinction that the opinion is making? And if so, why isn't that valid? Well, I still believe that just because it's a formal procedure, wasn't it formal that he had his fingerprints taken and that his picture was taken as well? And the officer could have just as easily in Tapia, he was turned around four times to my client's one time. And I don't believe that that should make a difference. He didn't have a full and fair hearing. It wasn't, you know, it's more analogous to a turnaround. He didn't have, the officers had to expel him. It was an expulsion just like the turnaround. It was exactly the same. Pictures were taken, fingerprints were taken.  What is the difference? There is a difference. It would be very arbitrary to say that those two are not equivalent. And furthermore, it doesn't matter that he only had six years when he had that expedited removal, because it's at the time that you apply for cancellation that the ten years are counted. So that is irrelevant. Okay. Counsel, you have exceeded your time. We appreciate the arguments of both parties, and the case just argued is submitted. Thank you, Your Honor. Thank you. The final argued case on this particular bracket this morning is Whitaker v. Garcetti.
judges: T.G. Nelson, Graber, Ikuta.